UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY DORMAN,

         Plaintiff,

                 <u>DECISION AND ORDER</u>

                 06-CV-6160L

     v.

WEBSTER CENTRAL SCHOOL DISTRICT,
THOMAS J. STRINING, Superintendent of Schools,

         Defendants.
_____

    On March 20, 2006, plaintiff Mary Dorman ("Dorman") commenced the instant action against the Webster Central School District (the "District") and former district superintendent Thomas Strining ("Strining"). Dorman, who was employed by the District beginning in September 2000 as a physical education teacher, and from 2002-2005 as a varsity girls swim coach, alleges that she was subjected to disparate treatment and was denied reappointment as coach for the 2005-2006 season on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL").

    Plaintiff filed a charge of discrimination with the EEOC on or about September 20, 2005. The EEOC was "unable to conclude that the information obtained establishes violations of the statutes," and issued a Right to Sue letter on March 6, 2006. This action followed.

Defendant now moves for summary judgment dismissing plaintiff's claims (Dkt. #37). For the following reasons, defendant's motion is granted, and the complaint is dismissed.

## DISCUSSION

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

### I.  Plaintiff's Claims Against Individual Defendant Strining

Plaintiff concedes that individuals are not generally subject to liability under Title VII, and that she has not alleged any overt acts by defendant Strining that might give rise to an exception. *See e.g., Tomka v. Seiler*, 66 F.3d 1295, 1313 (2d Cir. 1995). Accordingly, plaintiff's claims against Strining are dismissed.

**II.      Plaintiff's Discrimination Claims Against the District**

Dorman's claims of employment discrimination pursuant to Title VII and the NYHRL are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002).  Once plaintiff has established a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a mere pretext for discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Initially, the District argues that plaintiff has failed to demonstrate that she was subjected to an adverse employment action, because it is undisputed that plaintiff's position was a seasonal appointment which concluded at the end of each season, after which a new appointment – or reappointment – would be made.  In so arguing, the District relies upon *Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587 (S.D.N.Y. 2004), *aff'd in relevant part*, 128 Fed. Appx. 780, 782 (2d Cir. 2005), which held that where an employee is contractually employed for a fixed term, the expiration of the contract will not be deemed to be an adverse employment action.  Plaintiff, however, correctly points out that *Gourdine* has been criticized by some courts outside of this Circuit, *see e.g.*,

*Hernandez-Mejias v. General Electric*, 428 F. Supp. 2d 4, 8 (D.P.R. 2005) (collecting cases), and that the Second Circuit's affirmance of its holding is unpublished.

The Court, however, need not become mired in the conflicting case law. Even assuming that the few Second Circuit cases which address the issue represent a settled consensus, that consensus appears to be that where an employee is employed for a fixed term, the natural expiration of the term and the employer's decision not to rehire the employee will not be deemed an adverse employment action, *but only so long as the plaintiff in those circumstances had no reasonable expectation of rehire.* Compare *Racker v. St. Bonaventure Univ.*, 2005 U.S. Dist. LEXIS 32110 at *21 (following *Gourdine*, and concluding that plaintiff whose one-year employment contract expired, and who refused offer of continued employment on a provisional basis, did not suffer an adverse employment action) with *Liebowitz v. Cornell Univ.*, 445 F.3d 586 (2d Cir. 2006) (distinguishing *Gourdine* and declining to dismiss plaintiff's claims relating to expiration of contractual term of employment, where plaintiff alleged an "unofficial" understanding that persons in her position are entitled to reappointment) and *George v. Liverpool Central School Dist.*, 2000 U.S. Dist. LEXIS 14793 at *23 (N.D.N.Y. 2000) (expiration of an employment contract is not a tangible employment action where "there was no guarantee of future employment").

Here, interpreting the evidence in the light most favorable to plaintiff, I find that the District's serial prior renewal of plaintiff's position, combined with the District's admitted policy and practice that coaches who received positive performance evaluations would be reappointed, while coaches who received negative performance evaluations *may* not be, suggest that Dorman might have had some reasonable expectation of entitlement to be reappointed. As such, I find that Dorman has

sufficiently demonstrated, for purposes of setting forth her *prima facie* case of discrimination, that she was subjected to an adverse employment action.

Nonetheless, I further find that Dorman has failed to demonstrate that she was performing satisfactorily or that the District's decision took place amid circumstances giving rise to an inference of discrimination. As such, she cannot rebut the District's legitimate, nondiscriminatory reason for her termination, and her claims must be dismissed.

I note at the outset that certain elements of plaintiff's job performance are disputed. The District contends that as her coaching tenure progressed, Dorman failed to communicate effectively with players, parents and other coaches, was the subject of a number of complaints, made no effort to visit other swim coaching programs or to establish intramural programs during her third season as she had promised to do in connection with her second-season performance evaluation, and exhibited "behavior unbecoming a varsity coach" by refusing to attend at least one swim meet and threatening not to attend the team's year-end banquet. As a result, Dorman received an unsatisfactory evaluation following her third season, and was not reappointed to the swim coach position for a fourth season.

Dorman disputes the extent of her performance issues. She denies the characterization of her third season evaluation as "poor," and argues that she was never aware of complaints about her performance. Initially, to the extent that plaintiff's present argument conflicts with her deposition testimony that she *was* aware of complaints by athletes and students concerning her lack of knowledge concerning swimming programs, it must be rejected. *See Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996); (Dkt. #42, Att. 1 at 65:7-15). Moreover, Dorman's

initial, 2002 performance evaluation reflects that "[i]t was tough w[ith] some parent issues," and identifies practice with other schools, attendance at clinics, and communication with players as areas in which Dorman had been counseled and agreed to improve. (Dkt. #42, Att. 7, at Exh. J).

In May of 2003, Dorman met with one athlete's parent to discuss concerns over Dorman's having called the girl a "cancer" on the team, as well as concerns over Dorman's coaching techniques. Dorman did attend at least one clinic in 2003, which was recognized on her 2003-2004 season evaluation, but did not attend any other clinics or visit any other programs during any of the three seasons she was head coach. (Dkt. #42, Att. 7, at Exh. K).

In the fall of 2004, Dorman informed Morrison that she intended to attend clinics only "every other year," rather than every year, as she had previously agreed. Around the same time, Morrison was contacted by operators of the Webster Aquatic Center ("WAC", the public facility where swim team practices were conducted), who expressed concerns relating to the safety and behavior of Dorman's eight-year-old son, whom she had been bringing to practices continuously since August 2003. On September 28, 2004, Morrison notified Dorman that "[t]he constant presence of your son at practice and meets has become an issue. I am asking that you make other arrangements for him during the time you are coaching." (Dkt. #42, Att. 7, at Exh. N). The WAC, the District and Dorman subsequently agreed that for the remainder of the girls' swimming season – but not thereafter – Dorman's son could remain in the WAC office during practices. On October 17, 2004, Dorman sent Morrison a letter of resignation, resigning as varsity swim coach for the remainder of the season. Morrison accepted Dorman's resignation, and informed Dorman that he would not recommend her for reappointment.

Morrison met with Dorman to review her 2004 evaluation on January 26, 2005. Morrison informed Dorman that he was posting the varsity girls swim coach position and would look to move the program in a new direction, but advised Dorman that she could re-apply for it. Dorman's written evaluation described Dorman's performance in the areas of attending coaching clinics, rapport with athletes, and cooperation with staff, parents and the community, as "below average." (Dkt. #37, Att. 5 at Exh. R) Dorman left the meeting, refusing to sign her evaluation. She did not re-apply for the varsity girls swim coach position.

Dorman has gone to substantial effort to demonstrate that the District did not rate her performance accurately, and that she did maintain communication with parents, students and coaches. Despite Dorman's submission of voluminous items of correspondence by and between herself and others throughout her tenure as head varsity girls swim coach for the District, as well as affidavits from several parents of athletes who found Dorman's performance and communication satisfactory, I find that Dorman has failed to produce evidence of circumstances giving rise to an inference of discrimination, and/or that would rebut the District's legitimate, nondiscriminatory reason for her termination.

Whether or not Dorman's communications concerning the swim program and her rapport with athletes, parents and other coaches were generally positive, negative, or somewhere in between, the Court "will not act as a super personnel department that second guesses [the District's] business judgments." *Stone v. Bd. of Educ. of Saranac Central School Dist.*, 153 Fed. Appx. 44, 46 (2d. Cir. 2005), *citing Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). *See also Weiss v. Morgan Stanley Inv. Mgmt.*, 2008 U.S. Dist. LEXIS 24400 at *17 (S.D.N.Y. 2008) (where

parties disagree as to the characterization of plaintiff's work performance, the court will not "delve into the question of which portrayal is the correct one because this Court does not sit as a super-personnel department that reexamines an entity's business decisions").

Even assuming *arguendo* that Dorman has demonstrated that the District's assessment of her communications with third parties was unduly harsh, Dorman does not dispute that she had repeatedly refused to comply with the District's requirements that she attend clinics and shadow other school swim programs. It is also undisputed that Dorman would not comply with the District's request – made in response to concerns expressed by the WAC, the off-campus public swimming facility where practices were held – that she not bring her young son to practice. Indeed, Dorman resigned from the coaching position prior to the close of the 2004 season because she was unwilling to attend practices without her son.

Plaintiff's persistent effort to bolster her qualifications is largely beside the point. There were numerous documented problems with performance, and an employer has the right to deal with them. Whether the district was "right" or "wrong" is not really the issue here. Plaintiff must show that gender was a motivating factor in the employment decision. She has completely failed to point to anything of substance that suggests or hints at gender discrimination.

In support of her *prima facie* case and as evidence of pretext, plaintiff also claims that John Doerner, who was ultimately appointed to the head swim coach position for the 2005 season, was not as qualified as she.[1] Specifically, plaintiff argues that Doerner had not previously coached at the

---

[1] While alleging that the hiring of Doerner evidences discriminatory intent by the District with respect to its decision not to reappoint Dorman as head varsity girls swim coach for the 2005 season, Dorman makes no separate, traditional claim of "failure to hire" based upon

(continued...)

varsity level, and that the swimmers he coached had not performed as well in competition as those coached by Dorman. In light of the fact that Doerner had some twenty years of prior experience as a junior varsity swim coach (compared with Dorman's four year of swim coaching experience prior to her initial appointment by the District as head varsity girls swim coach), the evidence simply does not demonstrate that Doerner was less qualified than Dorman.

Plaintiff further contends that she was subjected to disparate treatment in that male coaches were allowed to bring their children to practice.[2] Plaintiff offers the affidavit of Wanda Moore, a former sentry, teaching assistant and modified softball coach for the District, which establishes that certain male coaches brought their children to school during practices occasionally or even regularly during the seasons Dorman was employed as a coach. Plaintiff offers no evidence, however, to support her contention that such behavior was known to or permitted by the District. Indeed, plaintiff had been bringing her son to practices for several months before the District ever became aware – through complaints by the Webster Aquatic Center – that she was doing so. Because there is no evidence concerning whether the District asked male coaches to discontinue bringing children to practices when it became known that they were doing so, plaintiff cannot demonstrate that she was disparately treated in that regard. To the extent that Dorman offers this evidence to rebut the

---

[1](...continued)
Doerner's appointment, which would require proof that she actually reapplied for the position, or else that doing so would have been a "futile gesture." *See e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application").

[2] To the extent that this claim accrued in September 2004, when Morrison first asked plaintiff to make alternate childcare arrangements for her son, it is also untimely. Dorman's EEOC charge was not filed until September of 2005 – well over 300 days later.

District's legitimate nondiscriminatory reasons for her termination, the District has not cited plaintiff's refusal to make alternate childcare arrangements for her son as the reason plaintiff was not reappointed: rather, the District notes the complaints made against plaintiff by students, parents and other coaches, and plaintiff's failure to honor her commitments and obligations to attend clinics, shadow other swimming programs, create an intramural program, and attend swim meets and team events at the end of the 2004 season. These alleged bases for plaintiff's termination are, as noted above, largely undisputed.

Also presenting sizeable difficulties to plaintiff's effort to impute a discriminatory motive to the District is the fact that the person who made the selection, Athletic Department Supervisor Morrison, was the same person who had repeatedly recommended plaintiff's appointment and reappointment to the position. In determining whether the undisputed evidence is suggestive of discriminatory circumstances or pretext, the Court evaluates an employer's intent "by reference to the decision-maker actually ordering the adverse employment action." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005). Here, the parties agree that Morrison was the decisionmaker with respect to the initial offer of the coaching position to plaintiff, as well the two subsequent offers of reappointment, and ultimately decided not to recommend Dorman's reappointment for a fourth season. "[W]here the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2$^d$ Cir. 2000). *See also Carlton v. Mystic Transp. Inc.*, 202 F.3d 129 (2d Cir. 2000). In light of Dorman's undisputed failure to satisfy the requirements of her position by attending clinics and shadowing other programs, as well

as the lack of evidence indicating gender-based animus on the part of the District, she cannot demonstrate that the District's reason for declining to reappoint her to the coaching position was pretextual. *See generally DeLuca v. Allied Domecq Quick Service Restaurants*, 2006 U.S. Dist. LEXIS 39261 at *27 (E.D.N.Y. 2006) (an employer may undertake an adverse employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). As such, Dorman's claim that the District discriminated against her when it failed to reappoint her to the girls varsity swim coach position for a fourth season must be dismissed.

To the extent that Dorman's complaint alleges a "pattern and practice" of discrimination by the District with respect to the coaching staff, that claim must also be dismissed. Dorman has not identified anything other than "isolated" and "sporadic" incidents of allegedly discriminatory action by the District. *See Brierly v. Deer Park Union Free School Dist.*, 359 F. Supp. 2d 275, 292 (E.D.N.Y. 2005).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Dkt. #37) is granted, and the complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 12, 2008.